## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**RICKY H.,**

      **Plaintiff,**

**v.**                             **Case No.: 2:25-cv-00336**

**FRANK BISIGNANO,**
**Commissioner of the**
**Social Security Administration,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are the parties' briefs requesting judgment in their respective favor. (ECF Nos. 4, 12).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's motion be **GRANTED** to the extent that it requests remand of the Commissioner's decision, (ECF

1

No. 4); the Commissioner's request to affirm the decision be **DENIED**, (ECF No. 12); the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and this case be **DISMISSED** and removed from the docket of the Court.

## I.    Procedural History

Claimant protectively filed for DIB on November 16, 2020, and formally filed the application on November 17, 2020, alleging disability due to "right eye blindness, spine condition, PTSD, depression, anxiety, mild OCD, BB gunshot wounds/possible nerve damage spine, and BB gunshots to face/stomach/neck." (Tr. at 254–61, 274–82). The claim was denied initially on April 14, 2021, and upon reconsideration on October 6, 2021. (Tr. at 141–51). Claimant requested a hearing before an Administrative Law Judge ("ALJ") on October 15, 2021. (Tr. at 152–53). The ALJ conducted a hearing on November 8, 2022, and issued an unfavorable decision on December 15, 2022, finding that Claimant was not disabled within the meaning of the Act. (Tr. at 14–62). The Appeals Council denied Claimant's request for review on June 23, 2023. (Tr. at 1–6). Claimant then sought judicial review in this Court, and the Court remanded the case for further administrative proceedings on February 6, 2024. (Tr. at 855–56).

Following the Court's remand, the Appeals Council vacated the Commissioner's final decision and remanded the matter to the ALJ. (Tr. at 859–65). The Appeals Council specifically directed the ALJ to further consider the opinion of Claimant's treating ophthalmologist, Dr. Claire Fraser. (Tr. at 861). The Appeals Council found that the ALJ did not adequately consider that opinion and noted that the evidence of record appeared to support Dr. Fraser's assessment. (*Id.*).

On remand, the ALJ conducted a second hearing on December 17, 2024. (Tr. at 805–21). The ALJ issued a second unfavorable decision on January 28, 2025, again finding that Claimant was not disabled. (Tr. at 777–804). Claimant then filed the present civil action seeking judicial review of the Commissioner's final decision. (ECF No. 1). Claimant filed a brief seeking judgment on the pleadings, (ECF No. 4), and the Commissioner filed a brief in support of the decision, (ECF No. 12), to which Claimant filed a reply, (ECF No. 16). This matter is fully briefed and ripe for resolution.

## II.    **Claimant's Background**

Claimant was 33 years old on his alleged disability onset date and 38 years old on his date last insured. (Tr. at 793). He communicates in English, has a high school education, completed specialized training/trade/vocational school in small engine repair, and previously worked as a heavy equipment operator and meter reader. (Tr. at 274, 276, 277).

## III.   **Summary of the ALJ's Decision**

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant

is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"), found at 20 C.F.R § Pt. 404, Subpt. P, App. 1. *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special

technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a mental disorder described in the Listing. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirements for DIB through December 31, 2025. (Tr. at 782, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since the alleged onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: "dextroscoliosis, loss of vision in the right eye, epiretinal membrane of the right eye, pulmonary sequestration and lung nodules, posttraumatic stress disorder (PTSD), generalized anxiety disorder, depressive disorder, and borderline intellectual functioning." (Tr. at 783, Finding No. 3).

Under the third inquiry, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (*Id.*, Finding No. 4). Accordingly, the ALJ found that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs; but can never climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, and crouch. He can occasionally crawl. He can never work at unprotected heights or operate a motor vehicle. He can occasionally work around moving mechanical parts. He can never work in vibration. He can frequently work in atmospheric conditions and humidity. His work can require no greater than occasional depth perception and no peripheral vision on the right side. He is limited to performing simple and repetitive work in a routine work environment with no greater than occasional changes in the work setting and tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota.

(Tr. at 786, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform his past relevant work. (Tr. at 793, Finding No. 6). Therefore, the ALJ reviewed Claimant's prior work experience, age, and education in combination with his RFC to determine his ability to engage in other substantial gainful activity. (Tr. at 793-95, Findings 7 through 10). Taking into account these factors and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy. (Tr. at 794-95, Finding No. 10). Thus, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 795, Finding No. 11).

## IV.   Claimant's Challenges to the Commissioner's Decision

Claimant challenges the Commissioner's decision on two grounds. First, Claimant contends that the ALJ failed to properly evaluate Dr. Fraser's opinion, particularly after the Appeals Council remanded the case for further consideration of that opinion. (ECF No. 4 at 6–12). Second, Claimant argues that the ALJ failed to meet the Commissioner's burden at step five because the vocational evidence does not support the denial decision. (*Id.* at 12–15). The Commissioner responds that the ALJ properly evaluated the opinion evidence, formulated a supported RFC assessment, and reasonably relied on vocational expert testimony to find that Claimant could perform other work. (ECF No. 12 at 5–13). Claimant replies that the ALJ's analysis remains deficient and that the vocational evidence does not cure the errors in the RFC assessment. (ECF No. 16 at 4–7).

## V.    Relevant Medical History

### A. Treatment Records

In April 2020, Claimant sustained a severe traumatic injury to his right eye during a hunting accident. Tug Valley Appalachian Regional Hospital records reflect that Claimant presented to the emergency room with multiple buckshot wounds, no vision in the right eye, ptosis of the right eye, and a penetrating injury to the right eye. (Tr. at 368, 371–72). He was later treated at the University of Kentucky ("UK") HealthCare for a ruptured globe of the right eye complicated by recurrent retinal detachment and cataract formation. (Tr. at 681). In June 2020, Dr. Fraser noted that Claimant's prognosis for visual recovery in the right eye was extremely guarded. (*Id.*).

Following the initial injury and surgical interventions, Claimant continued to receive ophthalmological treatment. On July 10, 2020, Claimant reported slight improvement, but his diagnoses included traumatic hyphema of the right eye, vitreous hemorrhage of the right eye, history of ruptured globe repair, retinal detachment of the right eye with multiple breaks, and proliferative vitreoretinopathy of the right eye. (Tr. at 718). Claimant thereafter underwent additional retinal surgery, and by October 2020, Dr. Fraser reported that his best corrected visual acuity was hand motions only in the right eye and 20/20 in the left eye. (Tr. at 728). Dr. Fraser further noted that Claimant's retina was attached after multiple surgeries but that he had a significant epiretinal membrane that could require further surgery. (*Id.*).

Claimant continued to report visual symptoms after that time. In December 2020, he reported worsening right-eye vision and floaters in the left eye with intense focusing. (Tr. at 740-41). In February 2023, ophthalmology records documented hand-motion vision in the right eye and 20/20 vision in the left eye, with visual field

8

deficiencies. (Tr. at 1048-49). Claimant continued to carry diagnoses including epiretinal membrane of the right eye, retinal detachment of the right eye with multiple breaks, and right posterior capsular opacification. (Tr. at 1051-52).

### B. Evaluations and Opinion Evidence

In March 2022, Dr. Fraser completed a visual capacity assessment. Dr. Fraser opined that Claimant's right-eye vision was limited to "hand motions only" for both distance and near vision. (Tr. at 772). She further opined that Claimant had no depth perception and no color perception in his right eye, and his prognosis for visual recovery was very poor due to retinal detachment repair with tractional membranes. (*Id.*). Dr. Fraser indicated that Claimant could frequently stand, walk, climb stairs, stoop, kneel, and crawl. (Tr. at 773). However, Dr. Fraser assessed that Claimant could not walk on uneven surfaces or balance, drive motorized vehicles, operate handheld tools, or use eye-hand coordination. (*Id.*).

In a subsequent disability form completed in June 2020, Dr. Fraser indicated that Claimant could constantly stand, walk, sit, climb stairs, stoop, kneel/crawl, bend at desk level, and handle, finger, and keyboard bilaterally. (Tr. at 738).

In April 2024, Claimant underwent a consultative ophthalmology examination performed by Ethan Adkins, O.D. (Tr. at 1117-24). Dr. Adkins documented 20/20 corrected near vision in the left eye and light-perception near vision in the right eye. (Tr. at 1117). Dr. Adkins further noted that Claimant had no depth perception and no peripheral vision in the right eye. (Tr. at 1120). The examination also included visual field testing, which documented total field loss in the right eye and generalized field restriction 360 in the left eye. (Tr. at 1123).

### C. Hearing Testimony

During the administrative hearing, Claimant testified regarding the functional effects of his visual impairments. He confirmed that he has no vision in his right eye. (Tr. at 811). He further explained that his left-eye vision is affected by floaters and blurriness, which interfere with his ability to see clearly. (*Id.*). Claimant testified that he experiences significant difficulty with depth perception. He stated that everything appears "level" to him and that he cannot perceive depth, which affects his ability to perform routine tasks. (Tr. at 812). For example, he indicated that when attempting to pick up objects, he often misses them because he cannot accurately judge distance. (*Id.*). He additionally explained that he has difficulty performing tasks such as cooking, noting that he has inadvertently placed his hand on a hot surface due to impaired depth perception. (*Id.*).

Claimant also testified that his visual impairments affect his ability to read and concentrate. He explained that reading text, such as on a phone, is difficult and slow because his vision becomes blurry and strained. (*Id.*). Additionally, Claimant reported that his depth perception issues affect his ability to drive safely, and he stated that he does not drive on unfamiliar roads because of these limitations. (Tr. at 815).

## VI.   Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support
> a particular conclusion. It consists of more than a mere scintilla of
> evidence but may be somewhat less than a preponderance. If there is

> evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to ensuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.   **Discussion**

Claimant contends that the Commissioner's decision should be remanded because the ALJ failed to (1) adequately evaluate the opinion of the only treating ophthalmologist of record and (2) meet the step five burden of producing evidence to show that Claimant could perform a significant number of jobs in the national economy.

### A. *Treating Opinion and RFC*

For claims filed after March 27, 2017, an ALJ evaluates the persuasiveness of medical opinions by considering several regulatory factors, the most important of which are supportability and consistency. 20 C.F.R. § 404.1520c(a), (b)(2), (c)(1)-(2). Supportability concerns how well a medical source supports the opinion with objective medical evidence and supporting explanations. 20 C.F.R. § 404.1520c(c)(1). Consistency concerns how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). Although the ALJ need not defer to

any medical opinion, the decision must explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. § 404.1520c(b)(2). The explanation must allow the Court to trace the ALJ's reasoning and conduct meaningful review. *Oakes v. Kijakazi*, 70 F.4th 207, 212-13 (4th Cir. 2023); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

This case also involves an Appeals Council remand order. When the Appeals Council remands a case, the ALJ "shall take any action that is ordered by the Appeals Council." 20 C.F.R. § 404.977(b). The Appeals Council previously vacated the Commissioner's final decision and remanded this matter after finding that the ALJ did not adequately consider Dr. Fraser's opinion. (Tr. at 861). The Appeals Council specifically noted that, in March 2022, Dr. Fraser opined that Claimant's right eye was limited to "hand motions only" and had no depth perception. (*Id.*). The Appeals Council further observed that the evidence of record appeared to support Dr. Fraser's assessment, including records showing shooting pain, floaters in the right eye, problems with depth perception, and prior administrative findings consistent with Dr. Fraser's opinion. (*Id.*). On remand, the ALJ was required to address those deficiencies and provide a reasoned evaluation of Dr. Fraser's opinion consistent with the Appeals Council's findings. Although the ALJ was not required to adopt Dr. Fraser's opinion, the ALJ was required to provide a reasoned explanation permitting meaningful review of the supportability and consistency findings.

Dr. Fraser's opinion identified significant visual limitations. She opined that Claimant's right eye vision was limited to "hand motions only" for both distance and near vision, that he had no depth perception and no color perception in the right eye, and that he had retinal detachment repair with tractional membranes in the right eye

with a very poor prognosis for visual recovery. (Tr. at 772). She further assessed that Claimant could not walk on uneven surfaces or balance, drive motorized vehicles, operate handheld tools, or use eye-hand coordination. (Tr. at 773).

On remand, the ALJ acknowledged Dr. Fraser's opinion but again found it unpersuasive. (Tr. at 792). The ALJ reasoned that the opinion was inconsistent with records from Advanced Eye Care, the April 2024 consultative ophthalmology examination, Claimant's daily activities, and a portion of Dr. Fraser's form indicating that Claimant could perform certain postural activities. (*Id.*). The ALJ also emphasized that Claimant retained generally good vision in the left eye. (*Id.*). The RFC ultimately limited Claimant to work requiring no greater than occasional depth perception and no peripheral vision on the right side. (Tr. at 786).

The ALJ's explanation does not adequately address the supportability and consistency of Dr. Fraser's opinion. With respect to supportability, the decision does not meaningfully engage Dr. Fraser's own clinical findings or explain why findings of hand-motion-only right-eye vision, no depth perception, no color perception in the right eye, tractional membranes, and poor prognosis failed to support the assessed functional limitations. (Tr. at 772-73, 792). The ALJ cited other portions of the record, but did not explain how those records undermined the particular functional consequences identified by Dr. Fraser, including the inability to safely navigate uneven surfaces, balance, use handheld tools, or use eye-hand coordination. (Tr. at 773, 792).

The consistency analysis suffers from a similar problem. The ALJ relied heavily on Claimant's retained left-eye visual acuity and certain daily activities. (Tr. at 792). However, normal vision in the unaffected eye does not, by itself, resolve limitations related to monocular vision, depth perception, visual field loss, or eye-hand

13

coordination. The Appeals Council had already identified the same general deficiency in the prior analysis and noted that the record appeared to support Dr. Fraser's assessment. (Tr. at 861). The ALJ's renewed rejection of the opinion does not sufficiently reconcile that directive with the evidence cited in the decision.

The Commissioner argues that the ALJ reasonably found Dr. Fraser's opinion unsupported and inconsistent with other evidence, including the consultative ophthalmology findings and Claimant's activities. (ECF No. 12 at 6-9). The Court may not reweigh conflicting evidence, but it must be able to follow the ALJ's reasoning. Rather, the Court's concern is whether the ALJ sufficiently explained how the cited evidence undermined the specific visual limitations identified by Dr. Fraser. Here, the decision does not sufficiently explain the connection between the cited evidence and the rejection of the treating ophthalmologist's functional limitations. The issue is not merely that the ALJ reached a conclusion unfavorable to Claimant. Rather, the ALJ did not sufficiently explain why evidence that the Appeals Council identified as supportive of Dr. Fraser's opinion did not support corresponding visual limitations.

The RFC assessment is not supported by substantial evidence because it rests on the ALJ's inadequate evaluation of Dr. Fraser's opinion. A claimant's RFC is the most the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The RFC assessment must be based on all relevant evidence and must include a narrative discussion explaining how the evidence supports each conclusion. SSR 96-8p, 1996 WL 374184, at *7. The ALJ must address material inconsistencies and provide enough explanation to permit meaningful review. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015); *Monroe*, 826 F.3d at 189.

The ALJ found that Claimant could perform a reduced range of light work with

14

certain visual limitations, including no greater than occasional depth perception and no peripheral vision on the right side. (Tr. at 786). However, the RFC does not incorporate or adequately account for the full extent of the limitations identified by Dr. Fraser. As discussed above, the ALJ did not adequately explain why additional limitations, such as restrictions involving near acuity, eye-hand coordination, use of handheld tools, balance, and navigation of uneven surfaces, were unsupported or inconsistent with the record. (Tr. at 772-73, 786, 790-92).

This omission is material. Visual impairments of the type documented in the record may affect a claimant's ability to perform work-related activities such as hazard avoidance, spatial judgment, near visual tasks, and coordinated use of the hands and eyes. The ALJ did not explain how the RFC accommodates these functional effects or why the additional limitations assessed by the treating ophthalmologist were excluded.

Accordingly, the undersigned **FINDS** that the ALJ failed to properly evaluate Dr. Fraser's opinion under 20 C.F.R. § 404.1520c, failed to adequately comply with the Appeals Council's remand directive, and formulated an RFC that is not supported by substantial evidence.

### B. Step Five Finding

At step five, the Commissioner bears the burden of showing that, considering the claimant's RFC, age, education, and work experience, the claimant can perform work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2); *Mascio*, 780 F.3d at 635. The Commissioner may satisfy this burden through vocational expert testimony, but the testimony must be based on a hypothetical that fairly sets out all of the claimant's supported limitations. *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989); *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006).

The ALJ relied on vocational expert testimony to find that Claimant could perform the representative occupations of mail clerk, small products assembler, and marker. (Tr. at 795, 818). Claimant challenges the reliability of that step five finding. (ECF Nos. 4 at 12-15, 16 at 4-7). The Commissioner responds that the vocational expert identified her sources and methodology, that SSR 24-3p applies to the decision, and that Claimant did not object to the vocational expert's testimony at the hearing. (ECF No. 12 at 9-13).

The Court need not resolve the parties' dispute regarding the precise effect of SSR 00-4p and SSR 24-3p to determine that remand is required. The dispositive problem is more direct. The step five finding rests on an RFC that does not adequately account for Claimant's visual limitations. A vocational expert's testimony cannot constitute substantial evidence when the underlying hypothetical omits limitations that should have been evaluated and either included or adequately rejected.

The vocational testimony confirms that the omitted visual limitations were material. On cross-examination, counsel asked the vocational expert about the visual demands of the identified occupations and noted that Job Browser Pro listed near acuity as frequent. (Tr. at 820). Counsel then asked whether modifying near acuity to occasional would affect the jobs cited. (*Id.*). The vocational expert responded: "Yes, they will not be able to perform any of those jobs." (*Id.*).

That testimony makes the RFC error outcome-determinative. In other words, if the limitations identified by Dr. Fraser were properly evaluated, the vocational evidence establishes that no work would remain available to Claimant. Accordingly, the Court cannot conclude that the omission of additional visual limitations from the RFC was harmless. The ALJ did not adequately evaluate whether Claimant's documented visual

16

impairments required additional limitations involving near acuity or other work-related visual functioning. Yet, the vocational expert testified that a limitation to occasional near acuity would eliminate all of the representative jobs identified. (*Id*.). Thus, the Court cannot conclude that the step five error was harmless.

The Commissioner correctly notes that counsel did not object to the vocational expert's qualifications or job-number methodology at the hearing. (ECF No. 12 at 11-13). That point may answer a freestanding challenge to the expert's methodology, but it does not cure the incomplete RFC. Claimant's counsel did ask a material vocational question concerning near acuity, and the vocational expert's answer directly undermined the step five finding if the omitted visual limitation is supported. (Tr. at 820). The ALJ did not resolve that issue in the decision.

Accordingly, the undersigned **FINDS** that the step five determination is not supported by substantial evidence.

## VIII.  **<u>Recommendations for Disposition</u>**

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that the District Court:

1.  **GRANT** Claimant's request for judgment on the pleadings, (ECF No. 4);

2.  **DENY** the Commissioner's request to affirm the decision, (ECF No. 12);

3.  **REVERSE** the final decision of the Commissioner;

4.  **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings; and

5.  **REMOVE** this matter from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin,

United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Goodwin, and Magistrate Judge Reeder.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** May 19, 2026



Joseph K. Reeder
United States Magistrate Judge

18